UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MARK A. TORNELLO,

                             **Plaintiff,**          07 Civ. 6697 (CLB)

        -against-


COUNTY OF WESTCHESTER,

                             **Defendant.**

----------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO COUNTY'S 12(b)(6) MOTION TO DISMISS COMPLAINT


<u>Preliminary Statement</u>

      This memorandum of law is submitted in opposition to Defendant's 12(b)(6) motion to dismiss the original complaint that has now been superseded by a first amended complaint (copy annexed). The action for compensatory damages for violations of Plaintiff's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983.



# The Presently Incontrovertible Facts Alleged in the Amended Complaint

*The District Attorney's Administrative Deficiencies*

As set forth in the first amended complaint (hereinafter "FAC" at para. 4) the District Attorney of the County of Westchester has for years maintained a policy and practice, in connection with the management of her office and her retention of police union support needed for her anticipated re-election campaign, of ignoring and/or covering up criminal wrong doing engaged in by police officers including *inter alia*:

a. Ignoring, for self-serving and political objectives, multiple felonies committed by the Chief of Police of the Town/Village of Harrison in connection with his surreptitious installation of an audio/video camera in the men's locker room at Police Headquarters,

b. Covering up, for self-serving and political objectives, a check forgery and resulting larceny committed by the Chief of Police of the Town/Village of Harrison, in connection with a $2,500 contribution intended for the Harrison Police Benevolent Association by Bonnie Brae Country Club,

c. Ignoring, for self-serving and political objectives, a manifestly materially false sworn statement made by at least one police officer in the Town/Village of Harrison on the basis of which an order of protection was unlawfully obtained,

d. Ignoring, for self-serving and political objectives, materially inconsistent sworn testimony of various state troopers given during Plaintiff's trial, referenced *infra*,

e. Ignoring, for self-serving and political objectives, various crimes committed by members of the Harrison Police Department (Coercion and Official Misconduct) by reason of which an unwilling "witness" for forced to make a specious complaint against a sworn member of the Police Department who not-so-coincidentally is a plaintiff in multiple federal civil rights actions against the Harrison Chief of Police and *inter alia* the Town/Village of Harrison proximately resulting from the commission of felonies by the Chief and certain of his subordinates,

f. Ignoring, for self-serving and political objectives, materially inconsistent sworn statements made by a state trooper in connection with the below-referenced trial, and *inter alia*,

g. Ignoring, for self-serving and political objections, obvious perjurious testimony as given by that trooper during a local court bench trial.

*Plaintiff's Arrest and Malicious Prosecution*

On November 30, 2006, at approximately 4:15 P.M. Plaintiff was lawfully operating a commercial vehicle on the northbound side of Interstate 95 at or about the New Rochelle toll barrier when a New York State Trooper (Robert Earl Sanders, hereinafter "Sanders") stopped him ostensibly for the purpose of inspecting that vehicle. In that connection Sanders took Plaintiff's driver's license from him and directed Plaintiff to locate and bring to him his registration and insurance card (FAC, para. 5).

Plaintiff exited his truck in order to comply with Sander's directive and to hand him his registration and insurance card at which time Sanders, who appeared angry and

out-of-control, falsely exclaimed to Plaintiff: "You touched me! You never touch a
Trooper!" *Id.* at 6.

In light of Sanders' threatening demeanor and false accusation Plaintiff slowly
retreated to his vehicle - - with Sanders advancing along side of him - - with a view
towards getting into and remaining in the cab while Sanders performed the inspection. *Id.*
at 7.

As Plaintiff attempted to pull himself up into the driver's seat of his vehicle,
Sanders without warning and/or provocation grabbed Plaintiff from behind by his hair
and trousers, forcefully pulled him backwards out of the vehicle and ordered him to lie
down on the pavement. When Plaintiff attempted to comply with this directive Sanders
forcefully struck Plaintiff purposefully driving Plaintiff's body into the pavement causing
serious physical injury including a herniated disc in his neck. Sanders then forcibly
handcuffed Plaintiff, causing an immediate inflammation of Plaintiff's pre-existing carpal
tunnel syndrome and arthritic condition and had him transported to a State Police
Barracks, where he was handcuffed to a wall prior to being processed. *Id.* at 8.

On December 4, 2006, Sanders prepared, swore to, and filed with the Justice
Court, Town of Mamaroneck (hereinafter the "Town Court") two misdemeanor
informations. The first accused Plaintiff of Obstructing Governmental Administration in
violation of New York State Penal Law Section 195.05 and alleged as "fact" *in toto*
that at:

"the aforementioned time, date and on Interstate 95 – Northbound,
said defendant did operate a 1996 Ford, color Gray, bearing New York
registration 26715JD. After being stopped by the deponent for a

4

Commercial Vehicle inspection, at mile marker 7.1, the defendant

did attempt to enter his vehicle and drive away from the inspection."

The second information accused Plaintiff of Resisting Arrest in violation of Penal Law

Section 205.30, reciting as "fact" *in toto* that:

> "After being stopped by the deponent for a Commercial Vehicle
>
> Inspection, at mile marker 7.1, the defendant did attempt to enter
>
> his vehicle and drive away from such inspection. As a result of
>
> the defendants [*sic.*] action, the deponent attempted to place
>
> the defendant under arrest, at which time the defendant did become
>
> combative to avoid his arrest."

*Id.* at 9.

On or about February 28, 2007, Sanders conferenced these charges with two

representatives of the Westchester County District Attorney's Office - - Assistant District

Attorney Michael Jeffrey Ashraf (hereinafter "Ashraf") and Assistant District Attorney

and New Rochelle "Branch Chief" Michael J. Borrelli, Jr. (hereinafter "Borrelli"). *Id.* at

10.

On the basis of Ashraf and Borrelli's advice and instructions to Sanders, to the

effect that the facts as sworn to by him in connection with the Obstructing Governmental

Administration charge were legally insufficient and that he had to materially alter the

"facts" in order to make out a *prima facie* Obstructing charge, Sanders agreed to:

> a. File a materially false Superseding Misdemeanor Information against
>
> Plaintiff, in order to avoid dismissal of the Obstructing Charge and a
>
> potential false arrest suit, and,

5

      b. Commit perjury at trial with respect to the underlying "facts" in order to

           enable Borrelli and Ashraf to prosecute Plaintiff with a view towards

           insulating Sanders from any such suit.

*Id.* at 11.

      As a result and on February 28, 2007, Sanders executed and filed with the

Town Court a superseding information in which he deliberately fabricated allegations of

"fact" so as to falsely provide a predicate for an Obstructing charge:

      "The defendant. . .at the above date, time and place, did during a

      vehicle and traffic stop, and while your deponent was investigating

      a second vehicle that stopped on the breakdown lane of I-95, exit

      his vehicle and shove your deponent as your deponent was walking

      towards the second vehicle. The defendant's actions caused your

      deponent to be harassed, annoyed, threatened and alarmed. Thereafter,

      the defendant began running back towards his vehicle. Your deponent

      instructed the defendant that he was under arrest and ordered him

      to stop. The defendant refused to stop running and then attempted

      to enter the driver's seat [*sic.*] of his vehicle which [*sic.*] was still

      running. Your deponent continued to tell him to stop, that he was

      under arrest and the defendant continued to pull himself into the

      vehicle as your deponent was attempting to pull him from the

      vehicle. The defendant struggled with your deponent in an effort to

      avoid being placed in handcuffs and under arrest. The defendant

      prevented your deponent from performing his lawful duties by shoving

your deponent and attempting to flee the scene."

*Id.* at 12.

By reason of Sanders' materially inconsistent sworn allegations as contained in the multiple informations, on March 12, 2007, Plaintiff's counsel wrote personally to Janet DeFiore, Westchester County District Attorney, provided her with the inconsistent sworn informations, and requested that she investigate how Sanders came to swear to the facts as contained in the superseding misdemeanor investigation "on the eve of trial". *Id.* at 13; Exhibit C to Defendant's motion (letter to DA).

Three days thereafter Michael F. Hughes, Assistant District Attorney and Chief of the District Attorney's so-called "Public Integrity Bureau" in writing advised Plaintiff's counsel that he had reviewed Plaintiff's "letter and its enclosures", spoken with ADA Ashraf, and was "confident that the issues. . .raised in your letter can be properly addressed by ADA Ashraf and the Mamaroneck Town Court". In that connection ADA Hughes referred Plaintiff's letter/complaint to the New Rochelle Branch Office of the District Attorney's Office "for their handling." The Branch Office, with Borelli as its "Chief", thereafter did nothing whatsoever with respect to the letter and/or the complaint embodied in it. *Id.* at 14.

Under the circumstances, and aware that the District Attorney herself and ADA Hughes had effectively endorsed their intended subornation of perjury from Sanders, on April 23, 2007, Ashraf and Borrelli acting in concert with Sanders prosecuted the charges contained in the superseding misdemeanor information at a bench trial held in Town Court, Town of Mamaroneck, New York (Jean Marie Brescia, J.). During that trial

Sanders' inconsistent sworn misdemeanor informations were the subject of cross-examination. *Id.* at 15.

On May 16, 2007, Justice Brescia rendered her verdict finding Plaintiff "not guilty" on all counts. *Id.* at 16.

As a proximate result of Defendant's conduct Plaintiff was forced to suffer: repeated impairments of his liberty interest due to multiple court-ordered appearances in Town Court, Town of Mamaroneck - - with the threat of a bench warrant being issued in the event that he failed to appear on any such occasion; impairment of his liberty interest by reason of his obligatory, court-mandated appearance for trial; substantial pecuniary losses by way of legal defense costs; emotional upset; anxiety; public humiliation; public embarrassment; shame; and he was otherwise rendered sick and sore. *Id.* at 17.

## The Claims

For his First Claim Plaintiff alleged that since Defendant deliberately prosecuted and/or persisted in the prosecution of Plaintiff: a) with knowledge that there was no probable cause for his arrest; b) after having entered into an agreement with Sanders to materially falsify the "facts" as alleged in the superseding misdemeanor information; c) after agreeing to suborn Sanders' perjurious testimony at trial; and d) after suborning that perjury with the resulting acquittal of Plaintiff on all charges, Defendant's conduct violated Plaintiff's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983. *Id.* at 19.

For his Second Claim Plaintiff alleges that Defendant's conduct constituted malicious prosecution under the common law of the State of New York and is actionable for damages.

## POINT

### SINCE THE MALICIOUS PROSECUTION CLAIM IS PREDICATED UPON THE DISTRICT ATTORNEY'S INTENTIONAL CONDUCT AS MANAGER AND ULTIMATE POLICY MAKER OF THE DISTRICT ATTORNEY'S OFFICE, THE COUNTY OF WESTCHESTER IS A PROPER DEFENDANT

All of movant's rhetoric aside, the issue presented to the Court is whether Plaintiff's malicious prosecution was the proximate result of Janet DeFiore's conduct as "a County actor administering her office pursuant to a policy. . .by which Plaintiff's constitutional rights were violated" (Defendant's Memorandum at 11). <u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1153 (2d Cir. 1995). Put differently, if the claims are predicated upon allegations "of deficiencies in the 'management of the [district attorney's] office'", the case must be tried to a jury. *Id.*

Since that is precisely the claim as presented in the first amended complaint, <u>Pinaud</u>, *supra* controls and the motion to dismiss must be denied.

<u>Conclusion</u>

The motion to dismiss must be denied.

Dated: White Plains, N.Y.
      November 5, 2007

LOVETT & GOULD, LLP
By: _____
      Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401