UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

MARK A. TORNELLO,

               Plaintiff,

     -against-

COUNTY OF WESTCHESTER,

             Defendant.

------------------------------------------------------x

07 Civ. 6697 (CLB)

**FIRST AMENDED
COMPLAINT**

**Jury Trial Demanded**

RECEIVED NOV 0 9 2007 USDC SDNY

    Plaintiff MARK A. TORNELLO, by his attorneys Lovett & Gould, LLP, for his

first amended complaint respectfully states:

## NATURE OF THE ACTION

    1. This is an action for compensatory damages for violations of Plaintiff's rights

as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C.

§1983.

## JURISDICTION

    2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

Plaintiff's state law claim is interposed in accordance with the Court's supplemental

jurisdiction, 28 U.S.C. §§1331, 1343. With respect to the latter claim, on May 22, 2007,

Plaintiff duly and timely filed with the Defendant a Notice of Claim as required by the

New York State General Municipal Law, following which there was conducted a so-

called 50-h hearing. Plaintiff's state law claim has not been settled and remains

outstanding.

## THE PARTIES

3. Plaintiff MARK A. TORNELLO is a citizen of the United States, a domiciliary

of the State of New York and a resident of the Northern Counties. Prior to the occurrence

of the events referenced *infra* Plaintiff has suffered from a continuing physical disability

that affects his ability to ambulate and prevents him from running.

4. Defendant COUNTY OF WESTCHESTER (hereinafter "County") is a

municipal corporate subdivision of the State of New York duly existing by reason of and

pursuant to the laws of said State. As more particularly set forth *infra* the District

Attorney of the County of Westchester has for years maintained a policy and practice, in

connection with the management of her office and her retention of police union support

needed for her anticipated re-election campaign, of ignoring and/or covering up criminal

wrong doing engaged in by police officers including *inter alia*:

a. Ignoring, for self-serving and political objectives, multiple felonies

committed by the Chief of Police of the Town/Village of Harrison in connection with his

surreptitious installation of an audio/video camera in the men's locker room at Police

Headquarters,

b. Covering up, for self-serving and political objectives, a check forgery

and resulting larceny committed by the Chief of Police of the Town/Village of Harrison,

in connection with a $2,500 contribution intended for the Harrison Police Benevolent

Association by Bonnie Brae Country Club,

c. Ignoring, for self-serving and political objectives, a manifestly materially false sworn statement made by at least one police officer in the Town/Village of Harrison on the basis of which an order of protection was unlawfully obtained,

d. Ignoring, for self-serving and political objectives, materially inconsistent sworn testimony of various state troopers given during Plaintiff's trial, referenced *infra*,

e. Ignoring, for self-serving and political objectives, various crimes committed by members of the Harrison Police Department (Coercion and Official Misconduct) by reason of which an unwilling "witness" for forced to make a specious complaint against a sworn member of the Police Department who not-so-coincidentally is a plaintiff in multiple federal civil rights actions against the Harrison Chief of Police and *inter alia* the Town/Village of Harrison proximately resulting from the commission of felonies by the Chief and certain of his subordinates,

f. Ignoring, for self-serving and political objectives, materially inconsistent sworn statements made by a state trooper in connection with the below-referenced trial, and *inter alia*,

g. Ignoring, for self-serving and political objections, obvious perjurious testimony as given by that trooper during a local court bench trial.

## THE FACTS

5. On November 30, 2006, at approximately 4:15 P.M. Plaintiff was lawfully operating a commercial vehicle on the northbound side of Interstate 95 at or about the New Rochelle toll barrier when a New York State Trooper (Robert Earl Sanders,

hereinafter "Sanders") stopped him ostensibly for the purpose of inspecting that vehicle. In that connection Sanders took Plaintiff's driver's license from him and directed Plaintiff to locate and bring to him his registration and insurance card.

6. Plaintiff exited his truck in order to comply with Sander's directive and to hand him his registration and insurance card at which time Sanders, who appeared angry and out-of-control, falsely exclaimed to Plaintiff: "You touched me! You never touch a Trooper!"

7. In light of Sanders' threatening demeanor and false accusation Plaintiff slowly retreated to his vehicle - - with Sanders advancing along side of him - - with a view towards getting into and remaining in the cab while Sanders performed the inspection.

8. As Plaintiff attempted to pull himself up into the driver's seat of his vehicle, Sanders without warning and/or provocation grabbed Plaintiff from behind by his hair and trousers, forcefully pulled him backwards out of the vehicle and ordered him to lie down on the pavement. When Plaintiff attempted to comply with this directive Sanders forcefully struck Plaintiff purposefully driving Plaintiff's body into the pavement causing serious physical injury including a herniated disc in his neck. Sanders then forcibly handcuffed Plaintiff, causing an immediate inflammation of Plaintiff's pre-existing carpal tunnel syndrome and arthritic condition and had him transported to a State Police Barracks, where he was handcuffed to a wall prior to being processed.

9. On December 4, 2006, Sanders prepared, swore to, and filed with the Justice Court, Town of Mamaroneck (hereinafter the "Town Court") two misdemeanor informations. The first accused Plaintiff of Obstructing Governmental Administration in violation of New York State Penal Law Section 195.05 and alleged as "fact" *in toto*

that at:

> "the aforementioned time, date and on Interstate 95 – Northbound,
> said defendant did operate a 1996 Ford, color Gray, bearing New York
> registration 26715JD. After being stopped by the deponent for a
> Commercial Vehicle inspection, at mile marker 7.1, the defendant
> did attempt to enter his vehicle and drive away from the inspection."

The second information accused Plaintiff of Resisting Arrest in violation of Penal Law Section 205.30, reciting as "fact" *in toto* that:

> "After being stopped by the deponent for a Commercial Vehicle
> Inspection, at mile marker 7.1, the defendant did attempt to enter
> his vehicle and drive away from such inspection. As a result of
> the defendants [*sic.*] action, the deponent attempted to place
> the defendant under arrest, at which time the defendant did become
> combative to avoid his arrest."

10. On or about February 28, 2007, Sanders conferenced these charges with two representatives of the Westchester County District Attorney's Office - - Assistant District Attorney Michael Jeffrey Ashraf (hereinafter "Ashraf") and Assistant District Attorney and New Rochelle "Branch Chief" Michael J. Borrelli, Jr. (hereinafter "Borrelli").

11. On the basis of Ashraf and Borrelli's advice and instructions to Sanders, to the effect that the facts as sworn to by him in connection with the Obstructing Governmental Administration charge were legally insufficient and that he had to materially alter the "facts" in order to make out a *prima facie* Obstructing charge, Sanders agreed to:

> a. File a materially false Superseding Misdemeanor Information against

Plaintiff, in order to avoid dismissal of the Obstructing Charge and a

potential false arrest suit, and,

    b. Commit perjury at trial with respect to the underlying "facts" in order to

enable Borrelli and Ashraf to prosecute Plaintiff with a view towards

insulating Sanders from any such suit.

    12. As a result and on February 28, 2007, Sanders executed and filed with the

Town Court a superseding information in which he deliberately fabricated allegations of

"fact" so as to falsely provide a predicate for an Obstructing charge:

"The defendant. . .at the above date, time and place, did during a

vehicle and traffic stop, and while your deponent was investigating

a second vehicle that stopped on the breakdown lane of I-95, exit

his vehicle and shove your deponent as your deponent was walking

towards the second vehicle. The defendant's actions caused your

deponent to be harassed, annoyed, threatened and alarmed. Thereafter,

the defendant began running back towards his vehicle. Your deponent

instructed the defendant that he was under arrest and ordered him

to stop. The defendant refused to stop running and then attempted

to enter the driver's seat [*sic.*] of his vehicle which [*sic.*] was still

running. Your deponent continued to tell him to stop, that he was

under arrest and the defendant continued to pull himself into the

vehicle as your deponent was attempting to pull him from the

vehicle. The defendant struggled with your deponent in an effort to

avoid being placed in handcuffs and under arrest. The defendant

prevented your deponent from performing his lawful duties by shoving

your deponent and attempting to flee the scene."

13. By reason of Sanders' materially inconsistent sworn allegations as contained

in the multiple informations, on March 12, 2007, Plaintiff's counsel personally wrote to

Janet DeFiore, Westchester County District Attorney, provided her with the inconsistent

sworn informations, and requested that she investigate how Sanders came to swear to the

facts as contained in the superseding misdemeanor investigation "on the eve of trial", In

accordance with her Office's practice and/or policy, DeFiore determined to ignore and/or

cover-up Sauders' crimes and requested that the head of her so-called Public Integrity

Bureau (Mike Hughes) act on her behalf in doing so.

14. Three days thereafter Hughes in writing advised Plaintiff's counsel on

DeFiore's behalf that he had reviewed Plaintiff's "letter and its enclosures", spoken with

ADA Ashraf, and was "confident that the issues. . .raised in [the] letter can be properly

addressed by ADA Ashraf and the Mamaroneck Town Court". In that connection ADA

Hughes, with DeFiore's authorization, referred Plaintiff's letter/complaint to the New

Rochelle Branch Office of the District Attorney's Office "for their handling." Neither

DeFiore nor the Branch Office, with Borelli as its "Chief", thereafter did anything

whatsoever with respect to the letter and/or the complaint embodied in it.

15. Under the circumstances, and aware that the District Attorney herself and

ADA Hughes had effectively endorsed their intended subornation of perjury from

Sanders, on April 23, 2007, Ashraf and Borrelli acting in concert with Sanders prosecuted

the charges contained in the superseding misdemeanor information at a bench trial held in

Town Court, Town of Mamaroneck, New York (Jean Marie Brescia, J.). During that trial

Sanders' inconsistent sworn misdemeanor informations were the subject of cross-examination.

16. On May 16, 2007, Justice Brescia rendered her verdict finding Plantiff "not guilty" on all counts.

17. As a proximate result of Defendant's conduct Plaintiff was forced to suffer: repeated impairments of his liberty interest due to multiple court-ordered appearances in Town Court, Town of Mamaroneck - - with the threat of a bench warrant being issued in the event that he failed to appear on any such occasion; impairment of his liberty interest by reason of his obligatory, court-mandated appearance for trial; substantial pecuniary losses by way of legal defense costs; emotional upset; anxiety; public humiliation; public embarrassment; shame; and he was otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1 to "17", inclusive.

19. Since Defendant deliberately prosecuted and/or persisted in the prosecution of Plaintiff: a) with knowledge that there was no probable cause for his arrest; b) after having entered into an agreement with Sanders to materially falsify the "facts" as alleged in the superseding misdemeanor information; c) after agreeing to suborn Sanders' perjurious testimony at trial; and d) after suborning that perjury with the resulting acquittal of Plaintiff on all charges, Defendant's conduct violated Plaintiff's rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraph "1" to "17", inclusive.

21. Under the premises Defendant's conduct constituted malicious prosecution under the common law of the State of New York and is actionable for damages.

WHEREFORE a judgment is respectfully demanded:

    a.  Awarding such compensatory damages as the jury may determine,

    b.  Awarding reasonable attorney's fees and costs, and,

    c.  Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
      November 7, 2007

LOVETT & GOULD, LLP
By:_____
         Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401