UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARK A. TORNELLO,

                Plaintiff,

    -against-                                 **REPORT AND RECOMMENDATION**

COUNTY OF WESTCHESTER,              07 Civ. 6697 (CLB) (GAY)

                Defendant.
------------------------------------------------------------X

TO THE HONORABLE CHARLES L. BRIEANT, United States District Judge:

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 and related New York state laws. Plaintiff alleges that the District Attorney of the County of Westchester has for years maintained a policy and practice, in connection with the management of her office and her retention of police union support, of ignoring and/or covering up criminal wrongdoing engaged in by police officers. Plaintiff further alleges that the County, through the District Attorney, deliberately prosecuted plaintiff: a) with knowledge that there was no probable cause for his arrest; b) after having entered into an agreement with a New York State Trooper to materially falsify the "facts" of the plaintiff's arrest; and c) after agreeing to suborn a New York State Trooper's perjurious testimony at trial. Plaintiff claims that this conduct amounted to a violation of plaintiff's rights as guaranteed by 42 U.S.C. § 1983. Presently before this Court is defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons that follow, I respectfully recommend that defendant's motion should be GRANTED.

**I. BACKGROUND**

The following facts are taken from the plaintiff's First Amended Complaint.

On November 30, 2006, at approximately 4:15 P.M., plaintiff was lawfully operating a commercial vehicle on the northbound side of Interstate 95 at or about the New Rochelle toll barrier when New York State Trooper Sanders ("Sanders") stopped him for the purpose of inspecting the vehicle. Sanders then took plaintiff's driver's license from him and directed plaintiff to locate and bring him his registration and insurance card. Plaintiff then claims that when he exited the truck in order to comply with Sander's directive, Sanders became angry and exclaimed: "You touched me! You never touch a Trooper!" Plaintiff claims that he then slowly retreated to his vehicle with the intent of getting into and remaining in the cab while Sanders performed the inspection. Plaintiff claims that while he was attempting to pull himself into the cab, Sanders grabbed plaintiff from behind by his hair and trousers and pulled him backwards out of the vehicle. When Sanders ordered him to lie down on the pavement, plaintiff claims that he attempted to comply when Sanders struck him and drove his body into the pavement causing serious physical injuries. Sanders then handcuffed plaintiff and transported him to the State Police Barracks for processing.

On December 4, 2006, Sanders prepared, swore to, and filed two misdemeanor informations with the Justice Court of the Town of Mamaroneck. The first accused plaintiff of Obstructing Governmental Administration in violation of New York State Penal Law Section195.05. The facts contained in the filing state that during a routine commercial vehicle inspection on the day in question, plaintiff attempted to enter his vehicle and drive away from such inspection. The second information accused plaintiff

2

of Resisting Arrest in violation of N.Y.S. Penal Law Section 205.30. The facts therein contained the same statements as the first and added that as a result of plaintiff's actions, Sanders attempted to place him under arrest, at which time plaintiff became combative to avoid arrest.

The complaint further alleges that on February 28, 2007, as a result of a meeting of the minds between Sanders and Assistant District Attorneys Michael Ashraf and Michael Borrelli (collectively the "ADAs"), Sanders filed a materially false Superseding Misdemeanor Information against plaintiff, in order to avoid dismissal of the Obstructing charge. This information reiterated the basic charges of the original information with the additions that: 1) plaintiff shoved Sanders as Sanders was investigating a second vehicle, and 2) that plaintiff then ran towards his vehicle and continued to run after Sanders ordered him to stop.

On March 12, 2007, Plaintiff's attorney wrote a letter to Janet DeFiore, Westchester County District Attorney. The letter detailed the above differences between the original and the superseding informations. The letter went on to request that she investigate the matter. Plaintiff claims that, in an attempt to cover-up and ignore Sander's conduct, the District Attorney requested that the head of the Public Integrity Bureau, Mike Huges take over any investigation. Three days later, Mr. Huges advised plaintiff that he had reviewed the letter and enclosures, spoken to ADA Ashraf, and was confident that the issues raised could be properly addressed by Ashraf and the Town Court. Hughes did refer the plaintiff's complaint to the New Rochelle Branch Office of the District Attorney. Plaintiff claims that nothing further was done by the District Attorney's Office or the Branch office in connection with this letter.

On April 23, 2007, a bench trial was held in the Town Court of the Town of Mamaroneck before Judge Brescia. It is plaintiff's contention that during that trial, Sanders committed perjury by testifying under oath to the facts contained in the Superseding Information he filed.[1] Sander's inconsistent sworn Misdemeanor informations were the subject of cross examination. On May 16. 2007, Judge Brescia found the plaintiff "not guilty" on all counts.

## II. RULE 12(b)(6) STANDARD OF REVIEW

In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). Further, for purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted). Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.

---

[1] It should be noted that a separate civil action is pending in this district against Trooper Sanders regarding the incident herein. See Tornello v. Sanders, No. 07 Civ. 4064 (S.D.N.Y. filed May 24, 2007).

Twombly, 127 S. Ct. 1955, 1974 (2007).

III.  DISCUSSION

    Defendant argues that the complaint should be dismissed on the grounds that the County cannot be sued for the actions of a District Attorney acting in furtherance of her prosecutorial role and that plaintiff has failed to establish a policy or practice of the County in order to establish a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

    In order to state a claim under § 1983 against a municipality, a plaintiff must allege that the constitutional violation was a result of municipal "policy or custom." Id. at 694-95.  Liability attaches only for wrongs that the municipality itself commits.  See Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992) ("it is only when the municipality itself commits the misdeed, that is, when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

    A plaintiff may prove a municipal policy or custom in several ways.  A plaintiff may show that an official with final policy making authority directly committed or commanded the alleged constitutional violation.  Monell, 436 U.S. at 690.  In the alternative, a plaintiff may also demonstrate that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing to a longstanding practice or custom which represents an official policy.  Id. at 694.  Additionally, a plaintiff

may show that a municipal policymaker failed to adequately train subordinates, if such failure constituted "deliberate indifference" to the rights of the individual who interacted with the municipal employees.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In the instant case, plaintiff claims that the District Attorney, as a County policy maker, maintained a policy or custom of ignoring or covering up the criminal wrongdoing of police officers.  Plaintiff claim that this County policy was causally related to the plaintiff's malicious prosecution.

A municipality may be liable for the actions of the district attorney in a limited set of circumstances.  See Ryan v. City of Watertown, No. 98 cv 0616, 1998 WL 709798, *5 (N.D.N.Y. Oct. 7, 1998).  In Baez v. Hennessy, 853 F.2d 73 (2d Cir. 1988), the Second Circuit held that a district attorney represents the State of New York when prosecuting a criminal matter, not the County.  Id. at 76-77.  The district attorney is a State actor in deciding when and in what manner to prosecute a suspected offender.  Id. at 77.  The court went on to hold that the "county has no right to establish a policy concerning how [a district attorney] should prosecute violations of State penal law." Id.  Because of these limits on the county's control over the district attorney, the court held that the county should not be held liable for her conduct.  Id.

In Gentile v. County of Suffolk, 926 F.2d 142 (2d Cir. 1991), the Second Circuit limited the holding in Baez, finding that while a municipality could not be held liable for a district attorney's decisions relating to a prosecution, it could be held liable "upon the county's long history of negligent disciplinary practices regarding law enforcement personnel, which gave rise to the individual defendant's conduct in promoting the malicious prosecution of plaintiffs." Id. at 153, n. 5.  In Meyers v. County of Orange, 157

F.3d 66 (2d Cir. 1998), the court again held that a county could be held liable for the management of the district attorney's office and a long history of negligent disciplinary practices regarding law enforcement. Id. at 77. In said case the County was held liable for police violation of equal protection rights because the district attorney repeatedly directed police to engage in illegal investigative procedures.

Conversely, the court in Ryan, 1998 WL 709798, at **5-6, found that the plaintiff's claim arouse out of the district attorney's decision to prosecute. Specifically, the policy at issue provided that prosecutions of matters without basis would be pursued to obtain a plea bargain and thereby avoid liability. Id. As this policy did not involve the mismanagement of the district attorney's office, the county was not liable.

Clearly then, an issue in the instant case is whether plaintiff's claim arises out of the district attorney's mismanagement of her office, or whether the claim arises out of decisions by the district attorney's office regarding prosecutions. See Meyers v. County of Orange, 157 F.3d 66, 77 (2d Cir. 1998). In support of his claim, plaintiff lists the following actions and inactions of the Districts Attorney's Office as evidence of a policy of covering up police criminal activity:

a. Ignoring multiple felonies committed by the Chief of Police of the Town/ Village of Harrison in connection with his installation of an audio/ video camera in the men's locker room at Police Headquarters

b. Covering up a check forgery and resulting larceny committed by the Chief of Police of the Town/ Village of Harrison.

c. Ignoring a manifestly false sworn statement made by at least one police officer in the Town/ Village of Harrison.

7

    d. Ignoring materially inconsistent sworn testimony of state troopers given during the plaintiff's trial.

    e. ignoring incidents of coercion and official misconduct in connection with a civil rights action against the Chief of police of the Town/ Village of Harrison *inter alia*.

    f. Ignoring materially inconsistent sworn statements made by a state trooper in connection with the plaintiff's trial.

    g. Ignoring perjurious testimony as given by same trooper during the plaintiff's court bench trial.

    Accepting all of these facts as true, plaintiff states a claim against the County alleging a custom, policy, or practice relating to the district attorneys's management of her office. Failure to act on reports of police wrongdoing does not invoke the prosecutorial function. Gentile v. County of Suffolk, 926 F.2d 142, 153 n. 5 (2d Cir. 1991). In this way, the claim is similar to the claim made in Gentile, wherein the Second Circuit found the county liable for police misconduct because of the district attorney's policy of ignoring similar conduct.

    However, unlike Gentile, the amended complaint in this case fails to allege sufficient facts to establish a causal connection between the alleged policy of the District Attorney's office and the alleged actions of the state trooper and the assistant district attorneys. The issue is whether the facts, taken as true, show evidence of a municipal policy, custom, or practice, so that a jury could reasonably infer that the individual conduct of the state trooper and assistant district attorneys in this case was causally connected to the policy. Gentile, 926 F.2d at 153. This test focuses not only on the actual knowledge of the municipality, but also upon the implied reliance of municipal

employees on that practice. Id. The plaintiff's factual allegations, taken as true and in the light most favorable to the plaintiff, only show evidence of a policy of ignoring police misconduct in the town/ village of Harrison, and then in circumstances wholly unrelated to the instant case. In fact, plaintiff points to only one instance where a Harrison police officer allegedly gave a false statement, and then in the context of a protective order. Furthermore, there are no facts alleged from which a reasonable jury could infer that a New York State trooper was aware of how the Westchester County District Attorney dealt with the Harrison police department. See Id. at 152-53. Even had plaintiff alleged facts from which a reasonable jury could have inferred Sander's awareness, the plaintiff's facts fail to suggest a causal connection between such a "practice" (involving, *inter alia*, video cameras and forged checks) and the actions by the trooper in plaintiff's criminal case. With respect to the conduct of the ADAs, plaintiff fails to allege any facts to suggest the District Attorney's Office had a policy of ignoring the misconduct of assistant district attorneys. In sum, these facts, taken as true, fail to support a causal connection between a policy of ignoring the misconduct of Harrison police officers and a state trooper making an alleged contradictory superseding statement in the plaintiff's case.

To the extent that plaintiff relies on the conduct of the District Attorney's Office in connection with the plaintiff's criminal trial to establish a policy implicating the County, such evidence is insufficient. The District Attorney's actions in forwarding the letter to the Public Integrity Bureau for investigation cannot be characterized as "ignoring police misconduct." In any event, said conduct constitutes a single decision by the District Attorney in connection with a single prosecution. Without evidence of a relevant policy,

practice, or custom in existence, causally related to the actions of the state trooper and the ADAs, plaintiff's claim against the municipality rests solely on a *respondeat superior* theory. Such a claim is barred, under Monell, from being brought against a municipality. 436 U.S. at 694-95.

## IV.  STATE LAW CLAIMS

As a result of the dismissal of all of plaintiff's federal causes of action, this Court should decline to exercise its supplemental jurisdiction over plaintiff's state causes of action. 28 U.S.C. § 1367(c)(3); Travelers Ins. Co. v. Keeling, 996 F.2d 1485, 1480 (2d Cir. 1993).

## V.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that defendants' motions to dismiss should be granted and plaintiff's complaint dismissed.

## VI.  NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The

with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F. 2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable CHARLES L. BRIEANT and not to the undersigned.

Dated: April 3, 2008
White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.